This case is set for 20 minutes per side and it involves some novel issues and so we'll welcome the appellant's argument. If you'd like to make a rebuttal argument, please stop before the full 20 minutes. Thank you and good morning Judge McCune, Judge Gould, and Judge Lee. Kevin Snyder for Olympus Spa. May it please the court. Again as Judge Gould has mentioned, I will attempt to reserve a few minutes for rebuttal. The spa is a place where women gather to share and experience the physical and spiritual healing and renewal through traditional Korean culture called Jjimjilbang. This cultural experience goes back 600 years, is exclusively for females, and nudity is required. It is the spa's position that the women sharing in this cultural and spiritual experience have associational and free exercise rights. Washington's public accommodation law should not apply to the spa because naked women and teenage girls are not publicly available goods or services that males are entitled to view when females do not consent. Now there are two venues that I would like the court to keep in mind. One is the physical venue, that is the bricks and mortars spa. The other venue is a virtual venue, that is the website, and these two need to be separated out. On the website is the language that is in dispute in the freedom of speech claim, and it is that biological women are welcome. Facing the threat of prosecution, the spa removed that language. Now the required removal of that language is a content-based restriction on speech by the state. Neither the state nor Tsumichi, frankly, dispute that in any meaningful way. The censorship of the spa's message on its website is the basis for the free speech action. So basically, just to understand your argument, it's that initial phrase, biological women are welcome, which was removed before the pre-filing settlement, correct? Correct. And remains removed? It is still removed. It would be helpful for me for you to explain how this differs from the FAIR case, because FAIR or Rumsfeld versus FAIR, and remember that's the military case, it stands for the proposition that compelled changes in conduct, which might incidentally compel some changes in speech, like an entrance policy, are not content-based speech. Why doesn't this case fall right into that arena? Your Honor, thank you for the question. The spa's position is that we do not care. The military was required, I'm sorry, the law schools were required per federal statute to allow military to have recruiting individuals on the campus. The law school said, look, this violates freedom of speech, and the Supreme Court said very clearly that the law schools could place language on their bulletin boards that contradict the military's message and say anti-military things on their bulletin boards. So therefore it didn't, was not a incidental burden on speech, or was only an incidental burden on speech. Here we have quite the opposite, is that not only must the, under the public accommodations law, must the spa require transgender women, males to enter the spa, but they can't even post something on their own website. That is different than FAIR. FAIR allowed the language on the bulletin boards here, language on the website is disallowed. So we think... I guess the distinction here might be if, I think if you had the spa's views on transgender women on the website, just our views on it, and the government forced you to take it down, I think you have a very strong First Amendment case. Here I guess the the wrinkle is that statement was in the webpage that discussed admission policy. So that seems like it may be in the realm of conduct, not pure speech. Well, we would, we believe it is pure speech, and... How do you separate the conduct and the speech in this context? Again, if it was just a separate page saying these are our views on transgender, I think you have absolute right to do that. When it's on admissions policy, it seems like it's kind of bleeding into the conduct. So, um, the way we distinguish that is that we go back to the issue of the two venues. One is virtual, and one is physical. And we believe the state is conflating those two to try to pull this into a conduct category. And we think that that's... Who can go into the spa? Can a transgender female enter the spa before they change the language? What was the admission policy? Only women, biological women, or transgender women who have had bottom surgery could enter the spa. Right. So that's, that's like the Supreme Court said in fair, if you have a law that says white applicants only, this is biological women entrance only. It seems to me they're quite parallel there. And you can't have white people only can come into my restaurant. And then you say, well, no, that's really, we have a religious, spiritual nature to our restaurant. And when you get there, we serve you special food. This seems quite different. I could address the whites only language in, in, in fair. And that first whites applicant, it said whites applicants only. That is the language of exclusion. This says biological women are welcome. And if I could draw a parallel to, to employment recruitment, it says it is legal for an employer, government or otherwise, to say persons with disability, military veterans, racial minorities are encouraged or welcome to apply. They don't say military veterans only. Women only can apply. So we think that that is a distinction. And, and we, and I would point the court also to this court's decision in Green versus Miss USA. In that case, the language was, they had a natural born female. And here we have biological women are welcome. We don't believe that there is a meaningful distinction between biological women are welcome, in this case, and natural born female in Green versus Miss USA. Lots of other questions. Let me continue on. Let me just take you to your distinction between the website and then when you get to the spa. So if, if you were to leave that on the website, biological women welcome, and then a transgender female shows up at the spa, there's also the same admissions policy, right? There is. If they're... And can she come in? If she doesn't have bottom surgery, then the answer is no. And, and so, so that's... It's not really biological women are welcome. It means non-biological women are not welcome. I mean, that's the reality. Persons present, people who are not vaginally presenting, forgive me for that, using that, those terms, but are, cannot use the spa. Are not welcome. Yes. And the reason is very practical is that this is, there is nudity in the spa. It is, it is required. So I'd like to address the issue, if I may, on the commercial nature of the spa. And there is both the state and one of its friends of the court have made the argument that businesses don't have associational rights. The spa would answer in two ways on that. One is on case law and the other is on a constitutional principle. As to case law, this court in Roommates.com found that there was associational interest granted there, and Roommates was indeed a for-profit business. As to a constitutional principle, this court said again in Green v. Miss USA that a for-profit entity, beauty pageant, still has free speech rights. And the Supreme Court said the same thing in 303 Creative. And Masterpiece Cake Shop, the bakery, was a for-profit business. It had free exercise rights. This court and the Supreme Court have used the analogy this way. They said a newspaper has paid subscriptions and it has advertisements that are paid for. But it still does not lose its free press rights. There's no principled reason if free speech, free exercise of religion, and freedom of the press are still available when there are commercial interests that associational rights should also not be available. So if you have a public accommodation, can you say no blacks? That's association. Okay. Let me deal specifically with the issue of race and the analogy. And first, we believe that the rhetoric used by the state and its amici are reprehensible, to be frank, because they are comparing traditional Koreans and conservative Christians with white supremacists. Well, I'm not doing that. I'm not buying into that rhetoric. I'm just asking if I walk out of the courthouse and I go to a restaurant and we would all agree that's a public accommodation under the Washington law, and then it says no blacks. Or whites welcome. I'm sorry. What would be your response to that? The response is this, is that the court in 303 Creative dealt with that issue with a dissent and said that's pure fiction. Secondly, is there is a distinction we believe that should be drawn between race and other categories, protected classes. Why? What's the Supreme Court's foundation for that? Well, they just said it. They said it's pure fiction. But if I could explain why. And that is race is historically and constitutionally distinct from other protected classes. The reason historically is there was race-based slavery in the British colonies and then for close to 90 years into the republic. And then there was a civil war. So historically, race is distinct. And then constitutionally, as a result, there were the Civil War amendments. So based on that, race is its own unique category. It is explicated in those Civil War amendments. If I may. So let's move to national origin instead of race. So I have a restaurant that says non-Koreans not welcome. Can that, is that legal under the Washington law against discrimination? That's not legal under Washington and public accommodations law. And we would not assert that position. We would assert that the specific position regarding race is the outlier. Well, but I asked about national origin, not race. Race, I'm sorry, national origin, a business or any other association cannot exclude persons based on national origin. And that's our position on that. If I can move just for the next minute or two, move to free exercise. The question really is how does the SPA negotiate employment division versus Smith? And the primary issue with that is that under employment division versus Smith, a law has to be neutral and generally applicable. And then if it is neither of those, then it goes to substantial burden. Our position is that the public accommodation laws are neutral, but they are not generally applicable. And we point to the carve-outs. There's two ways that regulation can fail general applicability. One is through individualized assessments, mechanism of individualized review. That is not present here. But what is present are statutory carve-outs. And there are several here. And I would like to just direct the court's attention to private clubs. Private clubs, a private club can have dues. It could have charge for entrance fees and events. It could have a SPA, whirlpools, masseuses, all of those things. And yet, it can exclude whomever it wants because it's not subject to the public accommodations laws. The SPA has these things, but it cannot exclude. So we believe based on that carve-out, there is no general applicability. Then from that... So are you saying that the SPA is a private club? No. We're saying that whenever there is a statutory carve-out for something... Then the... You know, we have a lot of law about private clubs. Like it or not, you can have... If you truly have a private club, you can, as we know, have what some people might consider discriminatory admission or subscription policies. But if this does not qualify as a private club, I'm having trouble understanding why the carve-out somehow gives you, in effect, a leg up here. I could answer that. If I could answer that by the court's permission to read two lines, one from two Supreme Court cases, I believe answer the question. One is from Tandon versus Newsom. Government regulations are not generally applicable whenever they treat any comparable secular activity more favorable than religious exercise. The court put the word any in italics. And then the other language is from Fulton versus Philadelphia. A law lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interest in a similar way. And with that, I'm going to reserve my final three minutes. Thank you. Thank you, counsel. We'll hear now from Pelley's. May it please the court. Neil Luna for the Human Rights Commission. Good morning. The WALAD is a public accommodations law that carefully balances an individual's First Amendment rights with prohibiting businesses that are open to the public from excluding individuals because of their, because of the color of their skin, because of their religious beliefs, because of their gender identity, or for any other protected class status. HRC respects the SPA's Korean cultural roots and its Christian religious beliefs. At the same time, this court should affirm the district court for three reasons. One, the SPA's nudity requirement is based in their Korean heritage, not in their religious beliefs. And according to the Supreme Court, only religious beliefs are protected by the and Whirlpool dips is not inherently expressive conduct that is protected by either the free speech clause or the right to expressive association. And three, the SPA is not an intimate association just because some customers are receiving services while unclothed. Colloquial intimacy is not First Amendment intimacy. The SPA requests a breathtaking expansion of the exemptions to public accommodations law. If the SPA is correct, any business that is open to the public and religiously owned would be able to exclude customers based on a protected class if the owner said that doing so was consistent with their religious beliefs. Public businesses cannot pick and choose their customers based on a protected class. The SPA wants the privilege of being a for-profit business open to the public. And for that privilege, it must, it has a responsibility for complying with the Wallace requirements not to discriminate based on that protected class. The SPA's gender identity discrimination in this case, Your Honor, is part of a long history of exclusionary policies by businesses, exclusionary policies that public accommodation laws were enacted to prohibit from railway cars to restrooms, from buses to barbecue joints and lunch counters. Could you address our decision in roommates.com where we said there likely is an associational right to select roommates. And one of the things our court said was, well, you should be able to come out of the shower in a towel in front of a male roommate. And they said that's kind of certain intimate nature of it. I mean, here it's much more intimate. I guess, according to the state's position, you could have a teenage girl naked in front of someone who has male genitalia. And that could, that does seem to implicate much more intimate concerns than the example that we said in roommate.com of a female roommate with a towel on coming out of the shower. So can you address our decision? Yes, Judge Lee, the SPA is not like roommates.com and the SPA's customers, the relationships between the SPA's customers and employees is not the same as a roommate. Your Honor is referring to the right to intimate association here, I believe. And so there's a test for what is an intimate association under the Constitution. What the Supreme Court has said, and what this Court has said, for example, in the roommates.com case, is that we focus here on those special, selective, personal, deeply personal relationships. And so we look at the size of the relationship. We look at the selectivity in the decisions made to both begin and maintain the relationship. And we look at the exclusivity, so seclusion from others in critical aspects of the relationship. And in roommates.com, there were so many, there were, roommates not only had access to the other roommates, to each other's personal spaces, they could be held accountable if one roommate were convicted or accused of a crime, for example. Here, with the SPA's, the relationships between and among the SPA's customers are nothing like that. They are, most of them are strangers that come to the SPA. Even if they had repeat customers, Your Honor, there's no obligation that there's a continuing relationship. Unlike with roommates, there's a continuing relationship there. So this case is, the SPA is nothing like roommates.com. I want to come back to speech, but before I do that, since we're on association, I have a question for you with respect to any comparison between the Boy Scout case, Dale, and the SPA. Because the Boy Scouts had a mission statement that the Supreme Court thought was evidence of expressive association. And the SPA has a mission statement, I quote, to restore and rejuvenate women's physical health as well as spiritual health. What role does that play in the free association analysis? Your Honor is asking now about expressive association, I believe.  Thank you. And we're kind of in the same ballpark, but a more specific expressive association. So the SPA is nothing like the Boy Scouts in Dale, either. The Boy Scouts impart values, and boys come there to learn about those values. They come week after week. With the SPA, providing services, providing the SPA's services to customers, that is not inherently expressive. Conduct. The SPA, when someone, so there's a test for that, Your Honor. The SPA has to be intending to say something by providing its services, number one. And what the SPA has said on that point, Your Honor, in the record, I'll point Your Honor to opening brief at 40. The SPA's purpose in providing its services are to restore and rejuvenate women's health, not to communicate anything, unlike the Boy Scouts. It seems like the SPA is in somewhat of a gray area in the associational realm. Maybe it's not as far as Boy Scouts, but there's some cultural value to it. And in terms of intimate association also, maybe it's not like a private club. But on the other hand, it's not a commercial transaction. It's not like going to Starbucks or Best Buy and just buying something. I mean, it is, there's something very intimate about the experience. It's not your normal, again, going to a store or anything of that sort. I mean, it is the nature of the whole experience. I mean, as a kid in Korea, I went to a men's only jjimjilbang, and you are naked. People are right next to you for hours on end. It's not even a unisex bathroom or locker room situation. The experience is being in a very intimate nature. So it seems like it's in a somewhat of a gray area here. I understand your point, differentiating the case. I agree with you on that, but it's a little bit murky. Respectfully, Your Honor, I don't think it's murky under the intimate association test articulated by the Supreme Court. I will say that even what this court has said is that in spaces where nudity is permitted or required, there is no constitutional right to be free from seeing people of the opposite sex in the nude or vice versa, and that's the parents for privacy case. Can you address one other question here is, the HRC said Olympus Spa had discriminated on the basis of sexual orientation. I mean, is this really a case about discrimination on sexual orientation? Doesn't like spa, I think, welcomes gays, lesbians. It doesn't matter. Seems like it's more basis of sex, not sexual orientation. Yes. So under the WALAD, Your Honor, 4960-040-29, it defines sexual orientation and which includes gender identity discrimination. And then under 4960-040-28, sex equals gender. Yeah, I guess here is, would you look sexual the gender identity comes under the definition of sexual orientation, not sex. And when we read a statute, we read it within its context and the words they use. So sexual orientation here is defined as heterosexuality, homosexuality, bisexuality, and gender identity. So it seems like we have to read gender identity in context with that definition. So to me, what the statute was trying to capture was, so for example, if you had a transgendered woman, a born biological male transgender woman has a relationship with a biological male and employer fires the transgender female, clearly on the basis of sexual orientation. They didn't want the employee to be very cute and say, no, no, we didn't discriminate on the basis of sexual orientation because here's a transgender female in a relationship with a biological male that's heterosexual. I think it seems like that's what the statute was intended to capture. And not, the gender identity is not defined within sex. It's defined within sexual orientation, if that makes sense. Your Honor, gender identity discrimination is sex discrimination under Bostock. Well, Bostock is different because Bostock was Title VII and had the word sex, didn't define the word sex. There was no definition of sexual orientation. There was no definition, there was no reference to gender identity. Here you have a definition of sex as gender. Then you have a definition of sexual orientation and that's where gender identity comes. And here it just doesn't seem like the discrimination is based on the basis of sexual orientation. There can be cases like that, I think, the example I gave you, but here it seems it's more about sex and sex is not defined to include gender orientation. Well, whether it's in Title VII or under, whether it's in Title VII or here, Your Honor, what the SPA cannot do, or what the SPA is trying to do in excluding transgender women is to differentiate between the stereotypical characteristics of a woman and the characteristics of a transgender woman that may not match up. But as Bostock said, you can't do that. That's sexual discrimination because in order to discriminate, you're referring to, you have to refer to someone else. But Bostock was a statutory construction. It was about Title VII and the word sex, which was not defined. And Title VII doesn't reference sexual orientation or gender identity. This statute does. It defines sexual orientation to include gender identity. It defines sex and doesn't include gender identity. So it seems like there's a difference between sex and sexual orientation under this statute. And gender identity comes under sexual orientation. Here, it doesn't seem like it's discrimination on the basis of sexual orientation. There can be cases where it is, where gender identity is being used as a cloak for discrimination on the basis of sexual orientation. That's the example I gave you. I think that's what it's intended to protect against. So if I'm understanding your question, Your Honor, gender identity is defined as part of the definition of sexual orientation. Yeah, that is under the statute. Right. And I think that's why HRC was saying, or found that this is discrimination based on sexual orientation. We've gone round and round in the courts on these definitions, right? And we have Hecox versus Little, and it sets out what is gender discrimination. We have what Judge Lee references, which is Title VII. But is there anything in the Washington statute that would suggest that simply because you put gender identity under sexual orientation, that you're stuck with the traditional notion in people's head of what is sexual orientation? No, Your Honor. There's nothing in the WALAD or anywhere else that would say that. I think that's just the way the legislature decided to, where the legislature decided to put the definition of gender identity discrimination, or gender identity. And as I understand it, the charge here is take a look at WALAD, take a look at its definitions, and gender identity is part of that. In other words, you can't discriminate based on gender identity. That's correct, Your Honor. And you can call it what you want, sexual orientation, gender identity, sex equals gender, but it comes down to Washington's view, as I understand it, is that you cannot discriminate in public accommodations based on gender identity. Is that a fair statement? That's a fair statement, Your Honor. And Washington arrives at that view based on the statute under WALAD? Yes, Your Honor. Okay. Do you have any other cases that have been brought on gender identity under the WALAD? Well, yes, Your Honor. So I believe in this court, in the Tingley case, what this, that case was about a psychologist that wanted to engage in gender, I guess, conversion therapy. And this court said that that's, that that wasn't allowed under the WALAD. There's also this, there's also, sorry, Your Honor, go ahead. Oh, no, I wanted you to talk about because then I kind of wanted to slightly shift the question. Yes, there's also been bathroom cases, Your Honor, in the Ninth Circuit, as well as transgender access to sports. And they go back to the statute then, and gender identity being part of the WALAD statute? Yes, Your Honor. Okay. I just wanted to ask you about Green v. Miss America, which was brought up. And if we, if we take the premise that gender identity is covered under the statute, my understanding is you're arguing for a rational basis, but Green would suggest that you would have to go to intermediate basis of review. What's the state's position? Is Your Honor speaking strictly about the, the exclusionary policy, entry policy, or is Your Honor speaking about the nature of a pageant, a beauty pageant, as being inherently expressive conduct? I'm speaking more about the speech and the, I guess, the statement, I'll call it. The biological women are welcome statement. Yes. Thank you, Your Honor. So the biological women are welcome statement, as the SPA itself explains, is an entry policy. And I'll point the court to the record, 3 ER, 449, and 450. So on page 450, the SPA provides its, its webpage, and it says, Olympus SPA entry policy. And underneath it, it says biological women are welcome. And I know that the SPA has argued that it's, are welcome. So it's inclusionary. But what the SPA's president has explained on page 449 is that our assertion is that there are historical, cultural, practical, and legal reasons to allow Olympus SPA to continue to offer our services in a biological female-only environment. It's an exclusionary policy, and it's an entry policy. It is not a, the SPA is not putting this, I know the SPA wants to create a distinction between its virtual space and its actual space, its physical space. But this is, that entry policy initiates and carries out the discrimination. And under the Rock Against Racism case, just because discrimination flows from words doesn't mean that the state can't regulate it. It is the discrimination. It's not a placard that the SPA is, is marching in a protest sign. This is the SPA's entry policy, and it just discriminates based on gender identity. Would you also address what Mr. Schneider raised with respect to free exercise? And it's not, you know, it's, it's not the situation that they had in Fulton, there was discretionary, but there's the club exception. And in his view, this is tantamount to the same activities that the club gets to do and impose discriminatory policies. Yes, Your Honor. So the WALADS private club exemption does not pose a tandem problem because private clubs and places of public accommodation are not comparable. And comparability for this purpose is judged against the state's interest that justifies the regulation at issue. And for private clubs, that the state's interest there is balancing free association rights. For places of public accommodation, the state's interest is in ensuring that everyone has equal and non-discriminatory access to publicly available goods and services. Those are two very different interests. And so we're not comparing apples to apples there. Furthermore, you would if, if you decided that they are this, that they are basically the same thing. I think that's what he's saying is, well, it's like when they were trying to remove non-profit exemptions from various organizations that really ran a public health club. So they really became a public accommodation. So he's saying, well, if, if a private club can offer you a spa and massage and and spiritual renewal, why isn't it the same yet? Because you've now, you can exclude them, but you can't exclude the Olympus spa. Yes, Your Honor. So for private clubs, everyone knows that they're private. They are exclusive and only for members. So when they are turned away from a private club, they're not surprised. But for places of public accommodation where everyone can go, there is an expectation that they be able to allow to go there. And so when, for example, a transgender woman is not allowed to use a space that's designated for women because of the fact that they're saying she is not a real woman, that what he, what the history of public accommodations law instructs us and shows is that there is a humiliation harm. There is a loss of dignity harm that the state has a significant, has a important interest in protecting. But what if the spa changed its policy and said, we are now a membership organization. You have to pay $15 to be a member. And when you become a member, it says, and I would embrace the health and spiritual nature of the spa signed. Here's my 15 bucks. Would they be a private club then? They would not, Your Honor, under the test that this, that the Washington State Supreme Court has articulated in Fraternal Order of the Eagles, that that test mirrors the test that the Supreme Court laid out for intimate associations. And it, again, looks at the exclusivity. And so when the Supreme Court looked at Fraternal Order of the Eagles, they had this long list of criteria to be a member. But the reason why they weren't a private club was because they were not exclusive enough. In other words, they didn't restrict their membership. And so Costco couldn't be a, wouldn't be a private club. Even though it's a membership. Correct. Correct, Your Honor. I see that I am out of time. This court should affirm. Thank you, counsel. I'd like to begin with the issue of nudity. And it was, it was suggested that nudity is only part of the Korean culture. The, the amended complaint states otherwise, as does the, the declaration, which was part of the exhibit. And the nudity is, the views on nudity are coextensive with the Korean and Christianity, Korean culture and Christianity. As to expressive association, that it was mentioned, this is sort of a gray area. I'd like to point the court's language in Roberts versus J.C.'s where it says that the First Amendment renders protection to the collective preservation of shared goals and cultural diversity. That same, the issue of the cultural experiences are associational interests under expressive association, as also found in the Rotary case. Intimate, as to intimate association, there are several factors. And of course, the size, duration, and the, the district court committed, I believe, reversible error by projecting onto the SPA facts that were not in the amended complaint. They said that these folks are strangers to one another. In fact, the amended complaint says that, that 75% of customers are returned due to the highly personal, professional, and intimate association the SPA has cultivated. Then on issues... But when was that added to the website? It's not in the website, I'm sorry. It's, it's in the... The amended complaint? It's in the amended complaint, and that's at 141 of the record, paragraph 70. Thank you. But it doesn't say when the so-called intimate association was added to their principles. I'm sorry. I think our position is that this, this has always been, the, the, the allegations in paragraph 70 have always been a part of the, of the facts underlying the case. And then I, I, under date, under parents for privacy versus bar, we don't believe that that is on point. The reason is there were causes of action, two under the 14th Amendment, one for privacy, another for parental rights, neither of which are present here. The other one was Title IX, and that's not present here as well. And so with that, my time is expired. Thank you for your deliberation on this matter. Thank you, counsel. Okay, we thank counsel on both sides for their excellent arguments, which are appreciated. This case is now submitted, and the parties will hear from us in due course.
judges: McKEOWN, GOULD, LEE